Maxine L. WASSON, Executrix
of the Estate of Roy E.
Walters, Appellant,

v.

William C. McCLINTOCK; Mary E. Tem-
ple, t/d/b/a Loyalsock Hotel; Common-
wealth of Pennsylvania, Department of
Transportation; and John Doe, the driv-
er of an unidentified vehicle.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1997.
Decided Dec. 9, 1997.

Robert H. Vesely, Williamsport, for appel-
lant.

Richard A. Gray, Williamsport, for appel-
lee, William C. McClintock.

Before FLAHERTY and LEADBETTER,
JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

Maxine L. Wasson (Plaintiff), Executrix of
the Estate of Roy E. Walters, appeals from
an order of the Court of Common Pleas of
Lycoming County (trial court), dated Febru-
ary 26, 1997, denying Plaintiff's Petition for
Relief of Judgment of *non pros* which was
entered on October 24, 1996. We reverse.

On Sunday, November 19, 1989, Roy E.
Walters (Decedent), with a blood alcohol lev-
el of .26, left the bar at the Loyalsock Hotel,
which is owned and operated by defendant
Mary Temple (Temple), and sustained fatal
injuries when he was struck by a truck while
crossing a road to get to his car.

Plaintiff commenced this action by filing a
praecipe for a writ of summons on March 27,
1991. On June 12, 1991, Plaintiff filed a
complaint. The trial court records reveal an
active docket until February 14, 1992, which
was the last date of recorded docket activity
until September 26, 1994. The uninterrupt-
ed period of docket inactivity endured for
two years and seven months. During this

time, however, Plaintiff did pursue undocketed discovery by seeking answers to interrogatories from the defendants.

After the September 1994 docket entry, Plaintiff changed counsel who actively pursued prosecuting the case for one year and seven months, as reflected by the docket entries, between September 1994 and April 1996. The trial court held a conference on February 1, 1996 and entered a scheduling order setting the trial date for September of 1996. Thereafter, on April 26, 1996, Plaintiff scheduled depositions for two defendants and a witness for May 13, 1996. Defendant Temple requested the depositions be postponed until May 16, 1996, and then, on May 13, 1996, the date originally scheduled for the depositions, filed a petition for *non pros.* Nevertheless, three or more depositions were taken by Plaintiff and others by defendant McClintock on May 16, 1996, and the case proceeded toward the scheduled trial in September of 1996. Then on October 24, 1996, the trial court granted the petitions for *non pros* in the case *sub judice.*[1] Pursuant to Pa. R.C.P. 3051, Plaintiff filed a timely petition for relief from judgment of *non pros* which the trial court subsequently denied by order dated February 26, 1997. Consequently, Plaintiff appealed the matter to this court.[2]

The sole issue for our consideration is whether the trial court committed a manifest abuse of its equitable discretion by granting the defendants' petition for judgment of *non pros.*

Plaintiff argues that the defendants in the instant matter are not entitled to a judgment of *non pros* because the defendants are estopped from seeking equitable relief of *non pros* for failure to prosecute because they delayed an additional one year and seven months before moving for judgment of *non pros* after they knew that Plaintiff had changed counsel and was actively prosecuting the case, during which time Plaintiff invested time and large sums of money in discovery and other legal matters. Plaintiff argues that the defendants sought the equitable relief of *non pros* from the trial court with unclean hands.

When a party files a petition for a judgment of *non pros,* that party is seeking equitable relief which is based on the equitable doctrine of laches. *James Bros. Lumber Co. v. Union Banking and Trust Co.,* 432 Pa. 129, 247 A.2d 587, 590 (1968). A court of common pleas has the inherent power to dismiss a case for lack of activity on the docket, *Penn Piping, Inc. v. Insurance Company of North America,* 529 Pa. 350, 354, 603 A.2d 1006, 1008 (1992), and the analysis for a judgment of *non pros* is the same whether the motion is brought by the defendant or whether it is brought *sua sponte* by the court. *Mudd v. Nosker Lumber, Inc.,* 443 Pa. Superior Ct. 483, 489, 662 A.2d 660, 662 (1995).

In *Penn Piping,* our Supreme Court stated that a court may exercise its discretion and enter a judgment of *non pros* when the following conditions exist: (1) a party has shown a lack of due diligence by failing to proceed with reasonable promptitude; (2) there is no compelling reason for the delay; and (3) the delay has caused prejudice to the adverse party. *Penn Piping,* 529 Pa. at 354, 603 A.2d at 1008. The *Penn Piping* Court, however, also held that, although a defendant normally must show that he was actually prejudiced, in cases that have been delayed for a period of two years or more, there is a presumption that the defendant has been prejudiced, and the defendant need not show actual prejudice for purposes of dismissing the case for lack of docket activity. *Id.* at 356–57, 603 A.2d at 1009. A plaintiff may rebut the presumption of prejudice with a

---

1. There is no indication in the record why the case was not tried in September of 1996.

2. Our scope of review is limited to determining whether the trial court abused its discretion in dismissing the case for failure to prosecute within a reasonable time. *Neshaminy Constructors, Inc. v. Plymouth Township,* 132 Pa.Cmwlth. 229, 572 A.2d 814, 816 n. 1 (1990). An abuse of discretion is not merely an error in judgment but exists where the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will as shown by the evidence of the record. *Id.*

compelling reason for delay.[3] *Id.*

In *Mudd,* after two years and nine months of docket inactivity, the defendant requested plaintiff to obtain a continuance the day before trial, purportedly to negotiate a settlement. One month later defendant moved for *non pros.* The Superior Court held that "where the circumstances indicate that the party seeking *non pros* has come to the court of equity with unclean hands, that party is estopped from obtaining this equitable remedy." *Mudd,* 443 Pa. Superior Ct. at 486, 662 A.2d at 661. The *Mudd* court concluded that the rebuttable presumption of prejudice, which arises from a delay that extends for at least two years, can be rebutted not only when the plaintiff establishes compelling reasons for the delay, but also when the conduct of the defendant contributed to the delay. *Id.* at 489–91, 662 A.2d at 663. The Superior Court, in *Mudd,* recognized that the principle underlying the grant of *non pros* is to ensure that plaintiffs do not take advantage of defendants through dilatory tactics and stated that this principle equally applies to defendants who delay the progress of a case in bad faith. *Id.* at 491, 662 A.2d at 663. In this regard, the *Mudd* court stated the following:

It is simply unreasonable to accept the proposition that the appellees [defendants] were somehow prejudiced by the delay in prosecution when they themselves requested additional delays. Our Supreme Court's decision in *Penn Piping v. Insurance Co. of North America, supra,* was meant to protect defendants from the unfairness, anxiety and prejudice that can result from a plaintiff's failure to pursue a threatened lawsuit.... We are hard-pressed to accept the notion that our Supreme Court, in establishing the "presumption of prejudice" in that case envisioned a situation in which defendants, through their own subterfuge, are able to avoid a final determination of liability....

Moreover, to accept the proposition that the appellees have been prejudiced by the delay would stand the principle underlying the grant of *non pros* on its head. The

grant of *non pros* has evolved as a mechanism to ensure that plaintiffs do not take advantage of defendants through dilatory tactics.... This principle should apply equally to defendants. If a plaintiff cannot delay a lawsuit to achieve a desired result, then neither should a defendant.

*Id.* at 490–91, 662 A.2d at 663 (citations omitted).

In *Biondillo v. Department of Transportation,* 674 A.2d 1175 (Pa.Cmwlth.1996), there was only one docket entry between June 1990 and January 1995. DOT subsequently moved for a continuance. Without ruling on DOT's motion for a continuance, the court struck the action from the trial list for failing to comply with local rules regarding the placement of cases for trial. DOT then moved for judgment of *non pros* which the lower court granted. This court, in *Biondillo,* followed the decision of the Superior Court in *Mudd* and held the following:

Regardless of whether the trial court ruled on DOT's motion for a continuance, the motion was drafted, filed and appears on the trial court's docket entries. As in *Mudd,* it is apparent that the motion for a continuance was filed in order to provide DOT with additional time to draft its petition for judgment of *non pros.* As a result, DOT came before the trial court with unclean hands.

*Id.* at 1178.

In the instant case, Plaintiff argues that the rationale of *Mudd* and *Biondillo* applies here because the defendants waited one year and seven months after the docket inactivity at issue ceased and, therefore, they should be precluded from obtaining the equitable remedy of judgment of *non pros.* In both *Mudd* and *Biondillo,* the defendants were precluded from seeking the equitable powers of the court because they acted in bad faith by contributing to the delay of the case for the purpose of preparing a motion for a judg-

---

**3.** In *Penn Piping,* the Supreme Court stated there will be a *per se* determination that a compelling reason exists for the delay where the plaintiff can establish that the delay was caused by bankrupt- cy, liquidation, or other operation of law, or where the plaintiff was awaiting significant developments in the law. *Id.* at 356 n. 2, 603 A.2d at 1009 n. 2.

ment of *non pros*.[4] In moving for a continuance of a trial date, the defendants in *Mudd* and *Biondillo* prevented the progress of the case because trial was the next progressive step without which the case could not proceed.

Although *Mudd* and *Biondillo* can be distinguished from the instant case because the defendants herein did not move to continue the trial, these cases are not inapposite. In *Mudd*, the Superior Court recognized that the doctrine of equitable estoppel was not strictly applicable when considering the effect of a judgment of *non pros* on the plaintiff. Equitable estoppel applies when " '[t]he person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts or deny or repudiate his acts, conduct, or statements.' " *Mudd*, 443 Pa. Superior Ct. at 490 n. 4, 662 A.2d at 663 n. 4 (quoting *Zitelli v. Dermatology Education and Research Foundation*, 534 Pa. 360, 370, 633 A.2d 134, 139 (1993)).

In *Mudd*, the defendants were not attempting to deny the existence of a state of facts. Similarly, in the instant case, the defendants do not attempt to deny that they moved for a judgment of *non pros* one year and seven months after the Plaintiff resumed docket activity. The *Mudd* court, however, applied a broader definition of estoppel stating that " 'a party is prevented by his own acts from claiming a right to the detriment of the other party who was entitled to rely on such conduct and has acted accordingly.' " *Id.* (quoting Black's Law Dictionary 494 (5th ed.)). Under this definition of estoppel, a defendant moving for *non pros* is prevented from benefiting from his acts or omissions when the plaintiff justifiably relied on such conduct to his detriment whether or not there is a factual dispute.

■ In the instant case, the defendants intentionally withheld moving for *non pros* for an unreasonable time. The new counsel for Plaintiff was entitled to rely on the defendants' conduct, which represented that they were pursuing the merits of their case when they participated in the trial scheduling conference without raising the issue of *non pros* and thereafter proceeded to attend and take depositions in preparation for the trial date, thereby inducing the Plaintiff to invest time and money in doing the same. According to *Mudd*, a defendant's delay can prejudice the plaintiff and bad faith can be inferred from the facts and circumstances of the case. *Id.*

In the case *sub judice*, the record reveals that counsel for the defendant Temple recognized the docket inactivity and wrote letters to his claims adjuster stating that he was aware of the docket inactivity. (Trial Court Opinion at 8). These letters were written in early 1994 after the defendants were entitled to move for *non pros*. By letter dated June 3, 1994, Temple's counsel explained that "[a]ll defense counsel have agreed not to stir this pot and just to allow it to sit until Plaintiff makes some movement toward disposition." (Trial Court Opinion at 8). By deliberately allowing over two years to pass after knowing that they had a right to move for *non pros*, the defendants acted in bad faith and induced reliance, by Plaintiff, on their taking steps looking to a trial on the merits which prejudiced the Plaintiff. By their conduct amounting to bad faith, the defendants have rebutted any presumption that they were prejudiced by the docket inactivity and are estopped from moving for judgment of *non pros* because they came to the court of equity with unclean hands. *Id.* at 486, 662 A.2d at 661.

Additionally, the defendants in the instant matter waived their right to move for *non pros*. Waiver is the knowing relinquishment or abandonment of a right. *Appeal of Churchill Area School District*, 30 Pa. Cmwlth. 413, 374 A.2d 1000, 1002 n. 1 (1977). A defendant cannot knowingly relinquish his right to move for *non pros* until he knows that he is prejudiced. While a defendant who has suffered actual prejudice may not realize that a plaintiff's delay compromised his defense until many months of resumed activity and discovery have passed, a defen-

---

**4.** See also the recent case of *Matusow v. Zieger*, 702 A.2d 1126 (Pa.Cmwlth.1997) following the rationale of *Mudd* and *Biondillo*.

dant who was presumptively prejudiced after more than two years of docket inactivity knows that he can move for *non pros* as soon as two years have passed or when the plaintiff resumes docket activity.

The trial court manifestly abused its discretion by granting the defendants' motions for *non pros* under the circumstances of this case. The defendants knew they were entitled to the presumption of prejudice under *Penn Piping* and could have moved for a judgment of *non pros* before docket activity resumed. As previously stated, a party seeking a judgment of *non pros* is seeking equitable relief based on the doctrine of laches. However, our Supreme Court has stated that "where the defendant takes steps looking to a trial upon the merits, like filing an answer, entering a plea, or taking a rule upon the plaintiff to take some action in the case, it constitutes a waiver of the laches." *Potter Title & Trust Co. v. Frank*, 298 Pa. 137, 142, 148 A. 50, 52 (1929). Similarly, defendants in the instant matter knowingly waived their right to *non pros* by conduct manifesting an intention to have a trial on the merits of the case over two years after their right to judgment of *non pros* had arisen, after they were aware of it, after they decided not to enforce their right, and after they joined Plaintiff in preparing for trial.

The defendants, in the case *sub judice*, knew that they could move for *non pros* by February of 1994, yet they schemed "not to stir this pot and just allow it to sit until Plaintiff makes some movement toward disposition," (Trial Court Opinion at 8), and waited until May 1996 to do so while watching Plaintiff spend money and time on discovery, motions, and witnesses. As previously mentioned, the *Mudd* Court stated that the availability of judgment of *non pros* protects defendants from unfairness and dilatory tactics; a principle, however, which protects plaintiffs as well. Plaintiff and her new attorneys should not have been led to believe

that they should invest money and time preparing their case, nor should the trial court have been caused to devote scarce judicial resources to the matter while the defendants' deliberately delayed moving for *non pros* for two years after knowing that presumptively prejudicial docket inactivity gave rise to a right of *non pros*.

■ Additionally, the trial court further abused its discretion by setting a trial date by order dated February 1, 1996, which encouraged vigorous preparations for trial to take place until the case had passed the scheduled September, 1996 trial date and only then granting the *non pros*, especially when the court could have raised the issue of *non pros* at the scheduling conference, *sua sponte*, almost nine months before instead of scheduling the trial at that time.

We, therefore, hold that the defendants are not entitled to equitable relief and that the trial court abused its discretion when it imposed the harshness of a judgment of *non pros* on Plaintiffs, after the defendants intentionally waited an additional two years to sit on their rights before moving for *non pros*. The defendants' conduct yields an unrebutted inference of bad faith. They are not entitled to equitable relief because they have unclean hands that resulted from an intentional delay which prejudiced Plaintiff. Any presumption of prejudice to the defendants arising solely from Plaintiff's biennial inertia has been rebutted.[5]

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 9th day of December, 1997, the order of the Court of Common Pleas of Lycoming County, dated February 26, 1997, at No. 91–00636, is hereby reversed.

---

5. No actual prejudice is reflected in the record or now claimed by defendants, although the trial court initially found *actual* prejudice in its original opinion dated October 24, 1996, on the basis of defendants' claims that the depositions which had been taken showed that people who were deposed could not remember "what went on the evening of the accident." When the defendants did not thereafter make the depositions a part of the record during the ensuing four months while Plaintiff's petition for relief of judgment of *non pros* was pending, the court withdrew that finding in its opinion dated February 26, 1997 and decided the case solely on the basis of presumptive prejudice from docket inactivity exceeding twenty-four months.