Tawoos **BAZARGANI, M.D., Petitioner,**

v.

**STATE CIVIL SERVICE COMMISSION**
**(Haverford State Hospital),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 24, 1997.

Decided Feb. 10, 1998.

Publication Ordered April 15, 1998.

Fincourt B. Shelton, Darby, for petitioner.

Howard Ulan, Harrisburg, for respondent.

Before COLINS, President Judge, and SMITH and FRIEDMAN, JJ.

SMITH, Judge.

This is an appeal filed by Dr. Tawoos Bazargani (Employee) challenging the State Civil Service Commission's (Commission) order dismissing Employee's appeal of her removal from her position as a regular staff psychiatrist at Haverford State Hospital, Department of Public Welfare (Appointing Authority). The Commission concluded that the Appointing Authority established just cause to remove Employee, pursuant to Section 807 of the Civil Service Act,[1] for her failure to follow hospital policy regarding the administration and monitoring of Lithium prescribed to her assigned patients. Employee questions whether the Appointing Authority established just cause for her removal.

I.

Employee became employed with the Appointing Authority in April 1978 as a staff psychiatrist. She received her medical degree in Iran and served an internship, residency and fellowship in New York, Michigan and Pennsylvania, respectively, before commencing her employment with Haverford State Hospital. At the time of her discharge, Employee was assigned to Unit 14East, to which she was transferred in September 1993 to care for patients who suffer severe psychological problems. After determining that Employee had deviated from its policy as to Lithium treatment, the Appointing Authority met with Employee on November 4, 1994 and December 7, 1994 at pre-disciplinary conferences to discuss concerns about her treatment approach. Employee's responses at both meetings were unacceptable to the Appointing Authority.

On December 9, 1994, Employee received a letter informing her that the Appointing Authority had suspended her pending an investigation. On December 22, 1994, the Appointing Authority sent another notice to Employee informing her that she was terminated, effective the close of business on December 27, 1994. The notice listed the following charges: inappropriate prescription of medications; failure to comply with hospital policies and monitoring practices which resulted in a patient's hospitalization; failure to follow policy and procedure related to two other patients; and failure to follow direction, policy and procedure and falsification of documents concerning a patient. The charges stem from Employee's treatment of Caroline K., Theresa M., Anthony S. and James H. Central to this appeal is the treatment of Caroline K., who was admitted to Bryn Mawr Hospital on October 24, 1994 in a comatose state due to Lithium toxicity, and Theresa M., who received continuous Lithium prescriptions from Employee and too few readings of her Lithium level. Caroline K. is seventy-four years old, and Theresa M. is thirty years old.

Employee appealed her removal to the Commission, and hearings were held on Oc-

---

1. The Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.807.

tober 31, 1995 and May 1, 1996. Employee testified that she did not falsify her patient's records and denied that she improperly treated Caroline K. or Theresa M. She testified that she did not observe Lithium toxicity in either patient and that she believed it was appropriate to prescribe higher dosages of Lithium when it appeared that patients were not responding to their current dosage. She also disagreed with the medical diagnosis that Caroline K. suffered Lithium toxicity, claiming that Activan, another drug administered to her, was the cause of her condition. Employee attributed her patients' high Lithium levels to what she called "false highs" and stated that the Lithium levels were being taken too close to the time that the Lithium dosage was given, which would show a peak reading and not the true amount of Lithium in a patient's blood stream.

Dr. Bazargani presented Dr. Dan Jacobs, a board-certified psychiatrist, as her expert witness. From 1973 to 1981, he worked with patients in the state health-care system with psychiatric problems similar to those treated by Employee. He opined that Employee's treatment was permissible because of the type of patients she treated. He also stated that when a doctor prescribed a higher dosage of Lithium, it showed that the doctor treated patients as individuals rather than as prototypes. Dr. Jacobs acknowledged on cross-examination that he speculated as to the causes for Caroline K.'s comatose state.

The Appointing Authority presented, among others, Drs. Lyudima Glazman, John Brady, Joseph DiGiacamo and Richard Eisner. Drs. Brady, DiGiacomo and Eisner reached the same conclusion and questioned Employee's competency as a psychiatrist. Dr. Brady, a board-certified psychiatrist, was hired specifically to review the patients' medical records. It appeared to him that Employee used Lithium to control behavior; he stated that this treatment practice was dangerous because "it is easy to exceed a safe level and get into a toxic range" and because the positive effects of Lithium are not reflected until weeks after a patient is stabi-

lized. Dr. DiGiacamo testified that before Employee began treating Caroline K., a notation was placed in her file that her Lithium level should remain around .8 millequivalents per liter (meq./L) because of the patient's failing kidneys. However, Employee substantially increased the patient's Lithium intake. Caroline's level reached 2.99 meq./L on October 20, 1994, and Theresa's level reached 2.37 meq./L on August 2, 1994. Employee, nevertheless, noted in Theresa's chart that her condition was satisfactory. Dr. Glazman, Employee's supervisor, testified that prior to her suspension and subsequent removal, the hospital held two pre-disciplinary conferences with Employee to discuss hospital concerns about her treatment practices, and Employee ignored the Appointing Authority's concerns because she believed in another treatment approach not followed by the hospital.

The Commission found that the Appointing Authority's evidence was credible and sufficient to support Employee's removal for just cause. However, it dismissed the charges of falsifying records and mistreatment of James H. and Anthony S. because the Appointing Authority had not established those charges. The Commission rejected Employee's claim that she was charged with medical malpractice and concluded instead that the Appointing Authority removed Employee for her failure to adhere to its policies and procedures rather than for her professional negligence.[2]

## II.

Employee initially argues that the Appointing Authority lacked just cause to remove her and that the Appointing Authority failed to demonstrate that Employee could not or would not perform her assigned duties. Employee also argues that her suspension notice was inadequate because it lacked clarity in apprising her of the charges presented as required by 4 Pa.Code § 105.3. Finally, Employee maintains that the Commission should have accepted her argument

2. This Court's review is limited to determining whether the Commission's decision is in accord with the law, the necessary findings of fact are supported by substantial evidence or whether constitutional rights have been violated. *Silvia v. Pennhurst Center, Department of Public Welfare*, 63 Pa.Cmwlth. 75, 437 A.2d 535 (1981).

that the charges against her amounted to an allegation of medical malpractice, which would have allowed her to present a "second school of thought" defense or to prove that her treatment and monitoring procedures were acceptable in the profession. Employee cite *Levine v. Rosen,* 532 Pa. 512, 616 A.2d 623 (1992).

The Appointing Authority contends that the notice issue was waived because it was not argued below. In the alternative, it argues that a notice of suspension does not have to meet the same requirements as a notice for removal and that the removal notice provided to Employee cured any defect in the suspension notice. 4 Pa.Code § 101.21(b). The Appointing Authority also argues that it had just cause for Employee's removal because she violated hospital policy, presenting life-threatening consequences for one of the patients in Employee's care. It disputes Employee's contention that the charges against her represent claims of medical malpractice, thereby requiring proof, according to Employee, that her actions deviated from good and acceptable medical standards. To support Employee's contention, she cited, among others, *Maurer v. Trustees of the University of Pennsylvania,* 418 Pa.Super. 510, 614 A.2d 754 (1992).

■ The Appointing Authority has the burden of proving that it had just cause to remove a regular civil service employee from his or her position. *Western Center, Department of Public Welfare v. Hoon,* 143 Pa. Cmwlth. 212, 598 A.2d 1042, 1044 (1991). The factors supporting a removal must be related to the employee's job performance and touch in some logical manner upon the employee's competency and ability to perform the job. *Mihok v. Department of Public Welfare, Woodville State Hospital,* 147 Pa.Cmwlth. 344, 607 A.2d 846 (1992). Whether the employee's actions gave the appointing authority just cause for dismissal is a question of law that this Court may review. *Western Center.*

In *Western Center* a regular staff dentist was fired when the appointing hospital charged that he failed to provide proper after-care instructions to his patient's treating medical staff and that he made inappropriate,

unprofessional philosophical statements to new staff regarding the hospital's abuse policies. The employee appealed to the Commission; upon review it reversed the appointing authority's decision, finding that it had no just cause to dismiss but that it did have good cause for a 30-day suspension. The appointing authority appealed the Commission's decision to reinstate the employee, and it argued that it had just cause for the employee's removal. This Court affirmed the Commission, reasoning that the appointing authority had not shown just cause for the employee's removal because he violated no medical policy regarding his dental responsibilities, and his statements regarding the hospital's abuse policies, although insensitive, were not contradictory.

■ To the contrary, the Appointing Authority in the case sub judice had an established policy regarding the administering of Lithium and its maintenance and monitoring by the attending psychiatrist, and the evidence demonstrated that Employee violated this policy. Caroline K. and Theresa M.'s medical records show that each of their Lithium levels was well beyond the recommended levels on a given day. Employee demonstrated from her practices that she would not follow hospital policy, and she continued to ignore the concerns raised about her treatment and patient-monitoring approach. The Court, therefore, agrees with the Commission that the Appointing Authority sustained its burden to prove just cause for Employee's removal. Competent evidence was presented by the Appointing Authority related to Employee's job performance and which logically touched upon her competency and ability to perform her job duties at the hospital. *Mihok.*

■ Employee also argues that the Appointing Authority's notice of suspension did not adequately apprise her of the charges against her. This issue is raised by Employee for the first time on appeal, and the Court, as a result, agrees with the Appointing Authority that the issue has been waived. *See Belote v. State Harness Racing Commission,* 688 A.2d 264 (Pa.Cmwlth.), *appeal denied,* 548 Pa. 683, 699 A.2d 736 (1997) (where the petitioner fails to raise an issue below, that issue is deemed waived upon appeal). Assuming arguendo that the issue

were appealable, Employee nevertheless could not prevail. The December 9, 1994 suspension notice to Employee stated: "You continue to be unfit for duty and in this state could be a danger to yourself or others. This in addition to the prior allegations for which you have already received pre-disciplinary conferences for which may be addressed through the disciplinary process." Employee's Ex. A1. When the terms "prior allegations and pre-disciplinary conferences" were mentioned, Employee was placed on notice that her suspension was due to her administration and monitoring of Lithium prescriptions to her patients. The notice was therefore sufficiently clear so as to inform Employee of the charges.

The Court also agrees with the position taken by the Appointing Authority that the medical malpractice defense raised by Employee does not apply. The hospital adopted policies requiring psychiatrists to follow general procedures in the treatment of its patients, covering, inter alia, the administration of medicines and the monitoring of patient progress. The Appointing Authority's policy recommended Lithium levels of 0.5—1.5 meq./L and that Lithium levels be taken one or more times each week until the patient's condition became stabilized. Employee violated hospital policy and refused to comply in spite of the pre-disciplinary conferences held to discuss her departure from established policy. Thus the foundation for the charges against Employee emanates from her violation of established hospital policy rather than from alleged medical malpractice. As a consequence, the Commission committed no error when it concluded that Employee's removal was due to her failure to adhere to hospital policies and procedures. Accordingly, the Court affirms the Commission's order dismissing Employee's appeal of her removal from employment as staff psychiatrist at Haverford State Hospital.

### ORDER

AND NOW, this 10th day of February, 1998, the order of the State Civil Service Commission is affirmed.