John C. BOSNJAK, Petitioner,

v.

STATE CIVIL SERVICE COMMISSION (State Correctional Institution at Albion, Department of Corrections), Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 2001.
Decided Aug. 9, 2001.

Dai Rosenblum, Butler, for petitioner.

Jonathan W. Kunkel, Camp Hill, for respondent.

Before LEADBETTER, J., FLAHERTY, Senior Judge, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

John C. Bosnjak appeals from an order of the State Civil Service Commission (Commission) which set aside the removal action imposed by State Correctional Institution at Albion, Department of Corrections (Department) and imposed a demotion from Corrections Officer 4 to Corrections Officer 1. We affirm.

Bosnjak was employed as a captain (Corrections Officer 4) at the State Correctional Institution at Albion (SCI–Albion). By letter dated April 20, 1998, he was informed that he was suspended, without pay, pending an investigation "into allegations concerning [his] conduct as an employe of this institution." Reproduced Record (R.R.), p. 300a. The letter also stated that "[i]t has come to the attention of this administration that there are alleged violations of the Department of Corrections Code of Ethics." *Id.* On April 23, 1998, Bosnjak filed an appeal to the Commission.

By letter dated May 28, 1998, the Department charged Bosnjak with violations of five sections of the Code of Ethics and specified the manner in which the violations occurred. The letter set a predisciplinary conference (PDC) for 1:00 p.m., May 29, 1998. The letter was hand-delivered to Bosnjak by SCI–Albion's personnel director. Bosnjak appeared at the scheduled PDC and was questioned about the incidents set forth in the May 28, 1998 letter. By letter dated June 2, 1998, the superintendent of SCI–Albion informed Bosnjak that he would be dismissed from his position effective June 3, 1998. The letter stated that the explanations Bosnjak offered at the PDC were not accepted. The letter went on to state that Bosnjak's actions were "unbecoming a commissioned officer and constituted gross negligence of management, leadership and supervisory responsibilities, as well as undermining the efficient operations of this institution and your position as Captain and Shift Commander." R.R., p. 303a.

On June 12, 1998, Bosnjak filed an amended appeal to the Commission. Hearings before a hearing officer were held on October 6 and November 19, 1999.[1] On June 27, 2000, the Commission issued an adjudication in which it found that Bosnjak had violated Section B–10 of the Code of Ethics[2] by:

(1) ordering Control Sergeant Martin Aubel to write an incident report regarding Major Miller's radio,

(2) threatening him with a Pre-disciplinary conference if he did not follow the order,

(3) ordering several coworkers to keep all information about this radio confidential and

(4) directing Training Sergeant Daniel Wertz to enter the SCI Albion dining hall and falsely indicate that he overheard the institution's Superintendent discussing a confidential matter.

Adjudication, p. 14.

■ The Commission also found that Bosnjak had violated Section B–29 of the

---

1. No members of the Commission were present at the hearings.

2. Section B–10 provides: "Employees are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated."

Code of Ethics[3] by failing to honestly answer questions posed by the Department's investigators and otherwise cooperate with the investigation. The Commission found that the Department failed to establish the remainder of the charges. The Commission found that because the Department failed to prove all charges and because Bosnjak had never previously been disciplined, removal was not appropriate. However, based on the charges proven, the Commission found that Bosnjak should not continue to hold a managerial or supervisory position with the Department. The Commission exercised its discretion and modified the discipline imposed to a demotion.[4] Bosnjak now appeals to this Court.

█ On appeal, Bosnjak argues that (1) the notice of suspension pending an investigation violated his due process rights by not specifically informing him of the charges against him; (2) the scheduling of

the PDC violated the Department's official written policy by providing him with less than the required 48 hour notice; (3) the Commission does not have authority to delegate to a hearing officer the duty to hold hearings; and (4) the Commission's findings are not based on substantial evidence.[5]

█ Bosnjak first argues that the notice of suspension pending an investigation violated his due process rights because it did not inform him with specificity of the charges against him.[6] By letter dated April 20, 1998, Bosnjak was informed that he was suspended pending an investigation into alleged violations of the Department's Code of Ethics. Bosnjak argues that this letter does not comply with 4 Pa.Code § 105.3 which requires that a notice of suspension include a clear statement of the reasons for the action, sufficient to apprise the employee of the grounds upon which the charges are based. This Court has

---

**3.** Section B–29 provides: "All employes shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully. Procedure in cases that may result in criminal prosecution will include those rights accorded to all citizens of the Commonwealth."

**4.** The Commission's authority to modify a penalty of the Department is contained in Section 952(c) of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, added by Section 21 of the Act of June 26, 1989, P.L. 47, 71 P.S. § 741.952(c), which provides:

In the case of an employe removed, furloughed, suspended or demoted, the commission may modify or set aside the action of the appointing authority. Where appropriate, the commission may order reinstatement, with the payment of so much of the salary or wages lost, including employe benefits, as the commission may in its discretion award.

Under this provision, the Commission has the power to modify the action of an appointing authority, even where the charges brought against the employee are proven. *State Cor-*

*rectional Institution at Graterford, Department of Corrections, v. State Civil Service Commission (Terra),* 718 A.2d 403 (Pa.Cmwlth.1998).

**5.** Our scope of review is limited to a determination of whether constitutional rights have been violated, whether errors of law have been committed, or whether the findings of the Commission are supported by substantial evidence, and, where appropriate, consideration of regularity of practice and procedure of the Commission. *Pennsylvania Game Commission v. State Civil Service Commission (Toth),* 561 Pa. 19, 747 A.2d 887 (2000).

**6.** Suspension pending investigation for the purpose of ascertaining an employee's fitness for continued employment is authorized by 4 Pa.Code § 101.21(b). When the investigation has not revealed cause for disciplinary action, the suspension is retracted and expunged for all records and the employee receives back pay for the full period of suspension. 4 Pa. Code § 101.21(b)(1). When the investigation has revealed cause for disciplinary action, the suspension is converted, either in whole or in part, to a disciplinary action. 4 Pa.Code § 101.21(b)(2).

held that, while the notice requirements are mandatory, failing to adhere to them is not grounds for automatic nullification of the personnel action. *State Correctional Institution at Pittsburgh, Department of Corrections v. Adamson,* 130 Pa.Cmwlth. 168, 567 A.2d 763 (1989), *petition for allowance of appeal denied,* 525 Pa. 638, 578 A.2d 932 (1990). Thus, the failure of SCI–Albion to provide specific reasons for suspending Bosnjak pending an investigation does not automatically invalidate that suspension.

 As to Bosnjak's due process argument, we note that Bosnjak was informed, by letter dated May 28, 1998, of the specific sections of the Department's Code of Ethics which he was alleged to have violated, and the manner in which these alleged violations occurred. A removal notice need not be drafted with the certainty of a bill of information, but it must be framed in a manner which enables the employee to discern the nature of the charges and adequately to prepare a defense. *Wood v. Department of Public Welfare,* 49 Pa.Cmwlth. 383, 411 A.2d 281 (1980). Due process of law is afforded when the employee is informed with reasonable certainty of the substance of the charges. *Chavis v. Philadelphia County Board of Assistance, Department of Public Welfare,* 29 Pa.Cmwlth. 205, 370 A.2d 445 (1977). The notice of May 28, 1998 informed Bosnjak with reasonably certainty of the charges against him and scheduled a PDC where he would be given an opportunity to respond to those charges. Thus, Bosnjak was afforded his due process rights by the notice of May 28, 1998.

██ Bosnjak next argues that the scheduling of the PDC violated the Department's official written policy by providing him with less than the required 48–hour notice. It is undisputed that the PDC was scheduled for 1:00 p.m., May 29, 1998 and that Bosnjak was given notice of the PDC on May 28, 1998. The letter dated May 28, 1998 advised Bosnjak that, "if there is a problem or concern," he should immediately contact the personnel director at·SCI–Albion, the Deputy Superintendent, the shift commander, or one of the two listed majors at the institution. R.R., p. 323a. The Department argues that Bosnjak waived his right to the 48–hour notice of the PDC by appearing at and participating in the PDC on May 29, 1998.

At a hearing before the hearing examiner, Bosnjak introduced into evidence a copy of SCI–Albion's policy statement pertaining to staff disciplinary procedures.[7] Section VII of the policy statement sets forth the requirements for PDCs and provides that "[u]nless extenuating circumstances exist, the hearing shall be held no sooner than two (2) days (48 hours) from the date of notice." R.R., p. 3332a. In the bottom margin below this provision is a handwritten notation. Bosnjak's attorney posed the following questions to him concerning the notation.

Q. Is this your handwriting?

A. Yes.

Q. And, what did you write there?

. . . .

A. Given notice at 3:00 p.m., May 28th 1998. PDC was May 29th, 1998 at 1:00 p.m.

Q. Did it bother [sic] that you were given less that [sic] 48 hours notice?

A. No.

Q. Why did you make a note of it?

A. Because it was a violation of policy.

November 19, 1999 Hearing, N.T., p. 437, R.R., p. 574a.

---

7. The policy was issued on July 1, 1997 by the superintendent of SCI–Albion pursuant to the authority delegated to him by the Commissioner of Corrections.

■ Waiver is the knowing relinquishment or abandonment of a right. *Wasson v. McClintock,* 703 A.2d 726 (Pa.Cmwlth. 1997), *petition for allowance of appeal denied,* 555 Pa. 749, 725 A.2d 1224 (1998). Bosnjak's testimony establishes that he was aware of SCI–Albion's policy requiring 48–notice for a PDC but that he was not "bothered" by being given less than 48–hour notice. The notice scheduling the PDC also advised Bosnjak to contact any one of several listed officials if he had a "problem or concern" with the PDC. By participating in the PDC, without any apparent objection, Bosnjak has waived his claim that his due process rights were violated by not being afforded 48–hour notice of the PDC.

■ Bosnjak next argues that there is no legal authority which would allow the Commission to delegate to hearing officers its duty to hear cases. In support of his argument, Bosnjak relies on Section 203 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. § 741.203, which sets forth the duties of the Commission. Section 203 provides, in pertinent part:

It shall be the duty of the members of the commission as a body-

. . . .

(2) Upon request or on its own motion, as herein provided, in cases of demotion, furlough, suspension and removal to conduct investigations, *hold public hearings,* render decisions on appeals and record its findings and conclusions. (Emphasis added.)

The Commission argues that it did not "delegate" its authority to the hearing officer. The Commission argues that the hearing officer presided over both the hearings in the case, ruled on objections made during the hearing, and determined which evidence should be included and excluded from the record. The Commission maintains that the hearing officer did not participate in the decision. The Commission argues that, after the hearings were concluded, the Commissioners reviewed the notes of testimony, the exhibits introduced at the hearing, and the briefs filed by the parties, and then rendered a decision.

■ In 1989, Section 204.1 was added to the Act[8] and authorized the Commission to "appoint and direct such attorneys as needed in its performance of the duties required under this act." Based on this specific grant of authority to the Commission in Section 204.1 and the lack of any specific provision in the Act prohibiting the use of hearing examiners, we conclude that the Commission has the authority to employ hearing examiners to conduct hearings.[9] In its adjudication, the

8. 71 P.S. § 741.204a, added by Section 3 of the Act of June 26, 1989, P.L. 47.

9. In 1991, the Commission requested the opinion of the Attorney General as to whether the Commission had the authority to appoint hearing examiners as designees of the Commission to conduct hearings and submit reports to the Commission. The Attorney General concluded:

[T]he Commission had authority to appoint hearing examiners as designees of the Commission to conduct fair and impartial hearings, to hear evidence, to make findings, and to submit their proposed reports to the Commissioners in accordance with the procedures and requirements set by the Commission under its rulemaking authority or under the General Rules of Administrative Practice and Procedure. 1 Pa.Code §§ 35.185, 35.187, 35.226 (1991).

Opinion of the Attorney General No. 91–2 (1991), slip op. at 2. While opinions of the Attorney General are not binding on this court, they are entitled to great weight. *Baird v. Township of New Britain,* 159 Pa.Cmwlth. 333, 633 A.2d 225 (1993), *petition for allowance of appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994).

Commission specifically stated that the notes of testimony, the exhibits introduced at the hearings and the briefs submitted by the parties have been reviewed by all the Commissioners.

 We next consider Bosnjak's argument that the Commission's findings are not supported by substantial evidence. The Commission is the sole 'fact finder in civil service cases and has exclusive authority to assess witness credibility and to resolve evidentiary conflicts. *Hetman v. State Civil Service Commission*, 714 A.2d 532 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, 558 Pa. 634, 737 A.2d 1227 (1999). We will not disturb the Commission's determinations regarding credibility or the weight of evidence. *Martin v. State Civil Service Commission (Department of Community and Economic Development)*, 741 A.2d 226 (Pa.Cmwlth. 1999). In the instant case, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to SCI–Albion, as the prevailing party. *Id.*

Control Sergeant Aubel testified at a hearing that a radio had been found in a staff bathroom and had been identified as belonging to Major Miller. Aubel testified that Bosnjak told the employees in the SCI–Albion control center that he did not want any information regarding the lost radio to be relayed to anyone in the institution. Aubel testified that he thought Bosnjak was serious in making the statement. Aubel also testified that Bosnjak directed him to write an incident report regarding the radio but he refused to do so. Aubel testified that he did not have personal knowledge of the entire incident and it was not his place to write the report. According to Aubel's testimony, Bosnjak indicated that he would convene a PDC if Aubel did not follow his order to write the report. Aubel testified that he did not think Bosnjak's request was a joke

but took it as an order. Bosnjak testified that he wanted the information about the radio kept confidential because he did not want inmates to find out about the lost radio. Bosnjak denied that he ordered Aubel to write a report about the incident. According to Bosnjak, he was joking with Aubel about the radio.

With regard to this incident, the Commission found that Bosnjak's actions were not consistent with good team management and strongly suggested that he wanted to embarrass a superior officer. The Commission also found that Bosnjak attempted to require Aubel to prepare an incident report knowing Aubel did not have the necessary personal knowledge and threatened Aubel with a PDC when he refused to write the report. The Commission found that Aubel credibly testified that he had learned about the missing radio through second-hand information.

Training Sergeant Wertz testified that Bosnjak approached him and asked him to go into the staff dining hall and say that he overheard the Superintendent discussing Nancy Hoover's reprimand. Wertz testified that when Bosnjak initially made this request he was not smiling or laughing. He testified that Bosnjak did laugh after Wertz declined the request. Wertz testified that when he refused to comply with Bosnjak's request, Bosnjak replied by laughing and stating that he would never ask Wertz to so something like that. Bosnjak admitted having a conversation with Wertz about the reprimand but denied asking Wertz to go into the dining hall and say that he had heard the superintendent discuss another employee's reprimand. The Commission found Wertz' testimony to be credible.

Michael Wolanin, an Office of Professional Responsibility (OPR) investigator, testified at a hearing that he interviewed Bosnjak during the suspension pending in-

vestigation. Wolanin testified Bosnjak answered with denials "all the questions we had." Hearing of October 6, 1999, N.T. 104, R.R., p. 167a. Wolanin testified that Bosnjak specifically denied that he had telephoned the home of Sergeant Story and spoke to the Sergeant Story's son about a work-related matter or had told Sergeant Wertz to enter the dining room and indicate that he overheard the superintendent discussing an employee reprimand. Wolanin also testified that Bosnjak was given the opportunity to submit to a polygraph examination but declined to do so.

The Commission found that Bosnjak failed to honestly answer questions posed by investigators and otherwise cooperate with the investigation. The Commission found that Wolanin credibly testified that Bosnjak denied, in the presence of OPR investigators, that he had directed Wertz to spread a false rumor. The Commission additionally found that Bosnjak had previously denied in a statement to investigators that he had made a telephone call to a coworker's home but admitted at the hearing that he made the call.

The findings of the Commission are supported by the testimony of Sergeant Aubel, Sergeant Wertz and Investigator Wolanin, found credible by the Commission. Determinations as to witness credibility are within the exclusive province of the Commission and this Court will not substitute its judgment for that of the fact finder. *Masneri v. State Civil Service Commission (Western Center, Department of Public Welfare)*, 712 A.2d 821 (Pa.Cmwlth. 1998).

█ Appellate review of whether an agency decision is in accordance with law may include, as a component, consideration of whether the agency's determination represents an abuse of discretion. *Toth.* Here, the Commission concluded, based on the charges proven, that Bosnjak should

not continue to hold a managerial or supervisory position with the Department. The Commission found: His actions involved an abuse of the authority entrusted to him in his leadership position. Further, although not successfully, [Bosnjak] attempted to undermine the authority of his Superintendent by soliciting a subordinate to make a false claim about him." Adjudication, p. 15. The Commission did not abuse its discretion in demoting Bosnjak from a Corrections Officer 4 to a Corrections Officer 1 in light of its finding that Bosnjak had abused the authority of his leadership position.

The order of the Commission is affirmed.

### ORDER

AND NOW, this 9th day of August, 2001, the order of the State Civil Service Commission in the above-captioned matter is hereby affirmed.