IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Theresa M. Snyder,               :
                                 :
              Petitioner         :
                                 :
         v.                      : No. 530 C.D. 2022
                                 : Submitted: February 24, 2023
Department of Corrections        :
(State Civil Service Commission),:
                                 :
              Respondent         :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED:  January 16, 2024


             Theresa M. Snyder (Employee) petitions for review of an order of the
State Civil Service Commission (Commission) that dismissed Employee's appeal
challenging her Level-One Alternative Discipline in Lieu of a one-day suspension
(Level-One ADLS) from her position as a regular educational guidance counselor
employed by the Department of Corrections (Department) at the State Correctional
Institution at Phoenix (SCI-Phoenix).  Employee argues that the Department failed
to provide adequate notice of the reasons for her Level-One ADLS and, even if
notice was adequate, the Commission violated Employee's constitutional rights
when it found good cause for the Level-One ADLS based on conduct not listed in
the notice.  After careful review, we affirm.

The relevant facts as found by the Commission are as follows. Employee, who is African American, is employed as an educational guidance counselor at SCI-Phoenix, where she has worked since 2007. As an educational guidance counselor, Employee is responsible for maintaining efficient and effective written and oral communication with staff. Employee received the Department's Code of Ethics and agreed to abide by it. Commission Opinion, 5/20/22, at 3.[1] Section B.10 of the Department's Code of Ethics provides that "[e]mployees are expected to treat their peers, supervisors, and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated." Reproduced Record (R.R.) at 67a. In March 2019, Employee left a meeting with the adult education principal, approached a new adult education teacher, Mary Irvin, who is Caucasian, in the hallway outside the principal's office, and told her to move along. Irvin responded that she needed the principal to let her into a classroom because she did not yet have permission to do so as a new employee. Employee then told Irvin "just because you're white, does not mean you're right." Commission Opinion at 4.

Irvin reported Employee's comment to the principal who did not address it. Irvin then began reporting Employee's conduct in writing on a DC-121 form, a Departmental form used to report incidents involving either inmates or staff, and through email. Irvin filed the first DC-121 form on November 22, 2019, in which she described Employee's harassment, starting with the March 2019 comment, and also stating that Employee told other staff they should not talk to or help Irvin because of Irvin's race. Certified Record (C.R.) at Item 3, Exhibit AA1 at 1. Irvin also described an incident that occurred on November 22, 2019, in which

_____

[1] The Commission Adjudication After Reconsideration (Commission Opinion), 5/20/22, is attached to Petitioner's brief.

2

she asked correction officers to assist her with Inmate R, who had a history of inappropriate conduct with female staff, and who was stalking Irvin and following her around. Irvin believed Inmate R did not have permission to be in the classroom area, but Employee believed he was permitted to enroll in a vocational class. *Id.* at 1-4.

On January 3 and 7, 2020,[2] Irvin again reported safety concerns with Inmate R and requested a formal separation from him. C.R. at Item 3, Exhibit AA1 at 4-9. Irvin reported that Employee told staff that Irvin stood in the hallway to taunt Inmate R, Inmate R was not stalking Irvin, and Irvin and other staff had been lying about Inmate R. *Id.* at 7. In March 2020, Irvin reported interactions with Employee, who was the union representative at SCI-Phoenix, regarding whether Irvin needed to take a COVID-19 test, and an incident regarding the copy machine. *Id.* at 10-11. On May 10, 2020, Irvin reported an incident that occurred in the inmate cafeteria, when Irvin and corrections officer Kevin Mitchell, (CO Mitchell) entered the room to assist in serving lunch. Employee made a comment to CO Mitchell, who is African American, that he was an "Uncle Tom" for walking in with Irvin. *Id.* at 12. On May 12, 2020, Irvin reported that Employee continued to harass her and make false accusations against staff who associated with Irvin. On May 12, 2020, Employee sought to have CO Mitchell removed from Irvin's classroom, where they were taking a break, when Employee claimed she had a separation order against CO Mitchell. *Id.* at 13-14. Irvin stated that Employee's behavior caused her to take two leave days to "properly cope with this continuing situation." *Id.* at 13.

---

[2] Irvin testified that she made a mistake and wrote "2019" instead of "2020" on these two DC-121 forms. Certified Record (C.R.) at Item 3, Commission Hearing, 10/27/21, Notes of Testimony, (N.T.) at 59.

3

Upon review of Irvin's DC-121 forms, field human resources officer Scott Distler (HR Officer Distler) investigated Employee's conduct, which included interviews with Irvin, CO Mitchell, corrections officer Darrel Parker, II (CO Parker), corrections officer Shalonda Tillery (CO Tillery), and Employee. Commission Opinion at 6; C.R. at Item 3, Exhibits AA2-AA6. Relevant here, CO Tillery, who is African American, reported that between November 2019 and May 2020, Employee made several comments to her about Irvin including that CO Tillery should watch out for Irvin because "she's trying to take our men," that Irvin and CO Mitchell "need to stay with their own kind," and that Irvin thinks she is better than them because she dates African American men. Commission Opinion at 5-6.

Based on the investigation, on November 30, 2020, the Department issued a pre-disciplinary conference notice (PDC notice) to Employee that a PDC would be held to consider whether she violated several sections of the Department's Code of Ethics, including Section B.10 which requires employees to treat each other with respect and professionalism. Commission Opinion at 7; R.R. at 1a-2a. In relevant part, the PDC notice quoted Section B.10 of the Code of Ethics and provided a description of the incidents giving rise to Employee's B.10 violation.

> Specifically, you should be prepared to respond to the allegations that between November 2019 through May 2020 you harassed and made a hostile work environment for a co-worker (M.I.) [referring to Irvin] to include, but not limited to, making racial and/or discriminatory remarks directly at this co-worker and/or when referring to her in conversation. Also, you referred to another co-worker (K.M) [referring to CO Mitchell] as "Uncle Tom", and disparaged the other co-worker (M.I.) when speaking about her dating black men, how she should only date her own kind, and that she thinks she is better because she is white and dates black men; and you have likewise behaved inappropriately toward other co-workers in the Education

4

Department. Also, in November 2019[,] and again in January 2020[,] you reinstated Inmate R[] back into an education department program in contravention to orders previously given by the principal barring the inmate from the school, and you did so with the intent to inflict mental anguish, or discomfort, and/or embarrassment on a co-worker (M.I.).

R.R. at 2a.

Deputy Superintendent Nathan Wynder and a panel of corrections administrators not assigned to SCI-Phoenix conducted Employee's PDC on December 3, 2020, at which Employee participated and denied making any racial comments to or about Irvin and denied calling CO Mitchell an Uncle Tom. After the PDC, Deputy Superintendent Wynder and the panel concluded that Employee violated several sections of the Code of Ethics, including Section B.10, and submitted their conclusions to the Superintendent of SCI-Phoenix. Commission Opinion at 8. Upon reviewing the panel's conclusions, the Superintendent determined that Employee would receive a Level-One ADLS for violating Section B.10 Code of Ethics and notified Employee in a letter dated February 3, 2021 (ADLS notice). *Id.* The ADLS notice described the ADLS as a level-one discipline, with no impact on Employee's pay, seniority, or other benefits, that carries the same weight as if Employee served a one-day suspension. R.R. at 3a. The ADLS notice further stated that Employee participated in the PDC on December 3, 2020, after which the Superintendent determined that Employee violated only Section B.10 of the Code of Ethics, recited the text of Section B.10, and explained Employee's appeal rights. *Id.* As to Employee's conduct, the ADLS notice stated as follows.

Specifically, it was determined that between November 2019[,] through May 2020[,] your conduct was unacceptable, not respectful or professional, and made a hostile work environment for a co-worker. This unacceptable conduct included, but was not limited to,

5

making racial and/or discriminatory comments directly at co-workers and/or when referring to them in conversation with other staff members.

This behavior is unacceptable, and any infractions(s)/offense(s) of a similar, or related nature following the date of this notice will result in more severe, progressive discipline, up to and including termination. It is our sincere hope that your record will show improvement and that further discipline will not be necessary.

*Id.*

Employee appealed the imposition of the Level-One ADLS to the Commission, which held a hearing by video on October 27, 2021, at which Employee and the Department participated, were represented by counsel, and presented testimony, documentary evidence, and argument. C.R. at Item 3. At the outset of the hearing, the Department stipulated that it intended to proceed only on the issue of Employee's suspension for good cause under Section 3003(7)(i) of the Civil Service Reform Act (Act), 71 Pa. C.S. §3003(7)(i),[3] and not on the claim that Employee discriminated against a co-worker under Section 3003(7)(ii) of the Act, 71 Pa. C.S. §3003(7)(ii). At the hearing, the Department presented testimony from Irvin, CO Parker, CO Tillery, Deputy Superintendent Joseph Terra, Deputy Superintendent Wynder, and HR Officer Distler. Employee presented her own testimony and testimony from business technology teacher Darlea Felder. During the hearing Employee made an oral motion to dismiss because the Department failed to make a *prima facie* showing to support Employee's Level-One ADLS, and also made an oral motion to dismiss for lack of sufficient notice. The Commissioner

---

[3] The statute known as the Civil Service Act, Act of August 5, 1941, P.L. 542, *as amended*, *formerly* 71 P.S. §§741.1-741.1005, was repealed by Section 2 of the Act of June 28, 2018, P.L. 470, No. 71, effective March 28, 2019. A similar act is now found in what may be called the Civil Service Reform Act (Act), 71 Pa. C.S. §§2101-3304.

6

deferred ruling on both motions until the hearing was completed and the Commission issued a written decision on April 22, 2022, in which it denied both motions, concluded that Employee's notice was sufficient, and the Department had good cause to impose a Level-One ADLS on Employee, based on her violation of Section B.10 of the Code of Ethics. R.R. at 21a-48a. The Commission concluded that Employee did not receive sufficient notice regarding her conduct in relation to Inmate R, COVID testing, or the copier incident, and that Employee lacked sufficient information to defend against those alleged incidents. *Id.* at 33a-34a. The Commission concluded that substantial evidence supported the finding that Employee's comments to Irvin, and to CO Tillery about Irvin, constituted a violation of Section B.10 of the Code of Ethics. The Commission found insufficient evidence to support a finding that Employee's comments to CO Mitchell constituted a violation, because CO Mitchell did not testify. *Id.* at 46a-47a.

Employee sought reconsideration, which the Commission granted in part and denied in part.

> The Commission hereby grants in part to amend the April 22, 2022 Adjudication to reflect the correct date of the incident of when [Employee] told [] Irvin "just because you're white, does not mean you're right" to March 2019, and denies in part by reaffirming the April 22, 2022 Order concluding the [Department] has presented evidence establishing good cause for suspension under Section 2603 of [the Act].

R.R. at 63a. The Commission issued an adjudication after reconsideration (Commission Opinion, 5/20/22), which included the correct date of the March 2019 incident that was reported in November 2019, and otherwise repeated the findings and conclusions of the earlier adjudication.

7

As to notice, the Commission first concluded that Employee had not waived the issue because she made an oral motion to dismiss for lack of notice at the hearing. Commission Opinion at 9. Employee argued that notice was insufficient because of the differences between the PDC notice and the ADLS notice, the lack of specific dates and the name of the co-worker in the ADLS notice, and the use of "included but not limited to" when describing Employee's comments. Employee argued that these failures prevented her from adequately responding to the charges, and that her discipline resulted from allegations for which she did not receive notice. *Id.* at 12. The Department responded that the PDC notice and the ADLS notice were sufficient to allow Employee to respond because both notices identified the relevant section of the Code of Ethics, described the relevant time period, and described the racial comments made to and about Irvin, citing in support *Bazargani v. State Civil Service Commission (Haverford State Hospital)*, 711 A.2d 529 (Pa. Cmwlth. 1998). *Id.* The Commission reviewed Section 105.3 of the Commission's regulations, 4 Pa. Code §105.3, regarding notice, *Bosnjak v. State Civil Service Commission (State Correctional Institution at Albion, Department of Corrections)*, 781 A.2d 1280 (Pa. Cmwlth. 2001), and *Chavis v. Philadelphia County Board of Assistance, Department of Public Welfare*, 370 A.2d 445 (Pa. Cmwlth. 1977), and concluded that the Department provided "sufficient notice to [Employee] regarding racial or discriminatory comments directed to co-workers and in referring to co-workers in conversations." Commission Opinion at 13. The Commission reasoned that the PDC notice and ADLS notice informed Employee that she was charged with violation of Section B.10 of the Code of Ethics for comments made to and about co-workers during a specified time period. *Id.* at 13-14. The Commission concluded that "[l]ike in *Bazargani*, the [] ADLS [notice] was framed in a manner which

8

enabled [Employee] to discern the nature of the charge was related to racial and discriminatory comments discussed during her PDC. *Bosnjak* [].” Commission Opinion at 14.

As to whether the Department had good cause for imposing the Level-One ADLS, the Commission concluded that the Department “established good cause to issue [Employee's] Level-One ADLS. [Employee's] racial and discriminatory comments directed toward Irvin and made during conversations with [CO] Tillery negatively reflect her competency and ability to perform her duties as an [e]ducational [g]uidance [c]ounselor,” citing in support *White v. Department of Corrections*, 532 A.2d 950 (Pa. Cmwlth. 1987). Commission Opinion at 28. The Commission reviewed the testimony and evidence presented by both parties, specifically credited the testimony of the Department's witnesses, and did not credit Employee's testimony. *Id.* at 15-26. The Commission found the Department's witnesses presented persuasive testimony regarding Employee's racial and discriminatory comments directed to her co-workers, Irvin and CO Tillery. *Id.* at 26. The Commission concluded as follows:

> It is clear to this Commission that [Employee's] racially charged statement toward Irvin in March 2019[,] that was reported in November 2019[,] is in direct opposition to her responsibilities and will not be tolerated. Although [Employee] claims her statement of “just because you're white, does not make you right” is a form of counseling as Irvin's union representative, we are disturbed that [Employee] would consider this clearly racial statement to be an acceptable form of conduct.
>
> Moreover, we find [CO] Tillery's testimony credible about how [Employee] continually referred to Irvin's Caucasian race and her interactions with African American male officers. While [Employee] denies ever

9

stating these racially charged and discriminatory statements to [CO] Tillery, we are unconvinced. We find [Employee] made racial and discriminatory comments to [CO] Tillery when she referred to Irvin in conversations from November 2019[,] through May 2020.

*Id.* at 26. The Commission reiterated that it found insufficient direct evidence to support a finding that Employee called CO Mitchell an "Uncle Tom," because Employee denied saying it, Felder did not hear Employee say it, Irvin did not hear exactly what Employee said, and CO Mitchell did not testify. *Id.* at 27-28. Employee then petitioned our Court for review.[4]

The following statutes and regulations are relevant to our analysis. Section 2603(a)-(d) of the Act, 71 Pa. C.S. §2603(a)-(d), provides in relevant part that the appointing authority, here, the Department, may suspend an employee without pay for disciplinary purposes, and employees "may only be suspended for good cause." *See* Sections 2603(c) and 2801(a)-(c) of the Act, 71 Pa. C.S. §§2603(c) and 2801(a)-(c). Section 2801(c) of the Act, 71 Pa. C.S. §2801(c), provides in relevant part that written notice of a personnel action shall be provided to the affected employee, that the "notice shall, in the case of [a] permanent separation, suspension for cause or involuntary demotion of a regular employee, set forth the reasons for the action," along with the employee's right to appeal the action to the Commission. Although "good cause" is not defined in the Act, the Commission's regulations provide that "good cause for suspension" may be for one of several reasons, including, relevant here, "misconduct amounting to a violation of law, rule or lawful

---

[4] This Court's scope of review is limited to determining whether constitutional rights have been violated, whether errors of law have been committed, or whether the Commission's findings are supported by substantial evidence, and where appropriate, consideration of the regularity of practice and procedure of the Commission. *Bosnjak v. State Civil Service Commission (State Correctional Institution at Albion-Department of Corrections)*, 781 A.2d 1280, 1283 n.5 (Pa. Cmwlth. 2001).

and reasonable Departmental orders," or for "similar substantial reasons." Section 101.21(a)(3) and (6) of the Commission's regulations, 4 Pa. Code §101.21(a)(3) and (6).[5] Section 105.3 of the Commission's regulations, 4 Pa. Code §105.3, defines what is required for a notice of suspension, and directs that such notice "shall include a clear statement of the reasons therefor, sufficient to apprise the employee of the grounds upon which the charges are based. Notices determined to be defective may result in the reversal of the personnel action."[6]

In reviewing the Commission's adjudication, we are mindful that the Commission "is the sole fact finder in civil service cases and has exclusive authority to assess witness credibility and to resolve evidentiary conflicts." *Bosnjak*, 781 A.2d at 1286. We may not disturb the Commission's determinations "regarding credibility or the weight of evidence." *Id.*

As to notice, our Court has observed:

> [The petitioner] first argues that the notices of suspension and removal failed to set forth the charges against him with specificity sufficient enough to satisfy the requirement of due process, complaining of the absence of notice of specific times, dates and places of his alleged wrongdoings. While the suspension or removal notice must be framed in a manner which enables the employee to discern the nature of the charges and to adequately prepare his defense, [] it need not be drafted with the certainty of a bill of indictment. [] Due process of law is afforded when the employee is informed with reasonable certainty of the substance of the charges against him. []

---

[5] Section 101.21 of the Commission's regulations was rescinded effective June 10, 2023, and the Section was reserved. The stated version of the regulation was in effect at the time of Employee's Level-One ADLS, which is treated as a suspension.

[6] Section 105.3 of the Commission's regulations was rescinded effective June 10, 2023, and the Section was reserved. The stated version of the regulation was in effect at the time of Employee's Level-One ADLS, which is treated as a suspension.

11

*State Civil Service Commission v. D'Amico*, 335 A.2d 846, 847-48 (Pa. Cmwlth. 1975) (citing *Benjamin v. State Civil Service Commission*, 332 A.2d 585 (Pa. Cmwlth. 1975)) (internal citations omitted). *See also Morrone v. Pennsylvania Board of Probation and Parole*, 456 A.2d 1143, 1144 (Pa. Cmwlth. 1983); *Bosnjak*, 781 A.2d at 1284; *Sisofo v. State Civil Service Commission (Pennsylvania Department of Transportation)* (Pa. Cmwlth., No. 1260 C.D. 2016, filed May 4, 2017).[7]

The following caselaw is relevant to the issue of notice. In *Bosnjak*, 781 A.2d 1280, our Court considered whether a corrections officer received sufficient notice, and whether he was properly removed and demoted from his position, for conduct that violated several sections of the Department's Code of Ethics, including Section B.10, the same section at issue here. The employee was notified of his suspension pending investigation, received notice of a PDC, in which he participated, after which he was dismissed and demoted. *Id.* at 1282. The employee appealed to the Commission, which upheld the B.10 violations, but reduced his dismissal to a demotion. *Id.* at 1282-83. The employee argued that the notice of his suspension pending investigation violated his due process rights because it was not specific enough to permit him to respond, in violation of Section 105.3 of the Commission's regulations. *Id.* at 1283. We stated that although notice requirements are mandatory, failure to adhere to them is not grounds for automatic invalidation of a suspension. *Id.* at 1283-84.

Further, this Court reviewed the employee's PDC notice, in which the employee was informed

---

[7] *See* Pa. R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

of the specific sections of the Department's Code of Ethics which he was alleged to have violated and the manner in which these alleged violations occurred. A removal notice need not be drafted with the certainty of a bill of information, but it must be framed in a manner which enables the employee to discern the nature of the charges and adequately prepare a defense. *Wood v. Department of Public Welfare*, [411 A.2d 281 (Pa. Cmwlth. 1980)]. Due process of law is afforded when the employee is informed with reasonable certainty of the substance of the charges. *Chavis v. Philadelphia County Board of Assistance, Department of Public Welfare*, [370 A.2d 445 (Pa. Cmwlth. 1977)]. The [PDC] notice [] informed [the employee] with reasonabl[e] certainty of the charges against him and scheduled a PDC where he would be given an opportunity to respond to those charges. Thus, [the employee] was afforded due process rights by the [PDC] notice [].

*Bosnjak*, 781 A.2d at 1284.

In *Bazargani*, 711 A.2d 529, the Court considered whether a physician employed by a state hospital was properly dismissed for just cause when she failed to follow hospital policy in administering medication to several patients. As to notice, the Court held that the employee waived her argument that the notice of her suspension pending investigation did not adequately apprise her of the charges against her because she raised it for the first time on appeal to the Court. *Id.* at 532-33. The Court further explained, in *dicta*, that even if employee had not waived the notice argument, she could not prevail. The notice of suspension pending investigation stated that the employee continued to be unfit for duty and referenced prior allegations for which she had already received PDCs. *Id.* at 533. The Court stated that the reference to the employee's prior PDCs placed her on notice that her suspension was due to her improper administration of medication to several patients, and that the notice was sufficiently clear to inform the employee of the charges. *Id.*

13

In *Chavis*, 370 A.2d 445, our Court considered whether an income maintenance worker was properly removed and demoted for deficiencies in record keeping. The Court reviewed Section 105.3 of the Commission's regulations regarding notice and concluded that the removal notice was deficient for several reasons. *Id.* at 447. First, the notice was retroactive in that it notified the employee of his removal and demotion which became effective on the day before the notice was mailed. Second, the Court held that the reasons listed in the notice "were much too general to allow [the employee] to prepare an adequate response." *Id.* The removal notice listed several reasons for the employee's discipline, stated in general terms, without reference to a specific time period or specific events, and without reference to the policies or procedures violated. The Court stated that although

> a listing of specific incidents of an employee's behavior in the notice may be unnecessary, the reasons listed should at least refer specifically to those aspects of the employee's responsibility in which he was found deficient and should identify the deficiencies with much more particularity than was done here. Charges as general as these make adequate preparation of a defense difficult if not impossible and make a hearing of little use to an employee threatened with discharge.

*Id.* at 447-48. The Court reversed and remanded, directing the employer to supply the employee with notice clearly stating the specific reasons for his discipline. *Id.* at 448.

In *Sisofo* (Pa. Cmwlth., No. 1260 C.D. 2016, filed May 4, 2017), our Court considered whether a five-day suspension was properly imposed by the Pennsylvania Department of Transportation (PennDOT) on an assistant highway maintenance manager for inappropriate behavior and safety violations. PennDOT notified the employee in writing that an investigation "'of the incident described

14

below'" brought forth evidence of inappropriate behavior, safety violations, and of threatening employees, but "[t]here was no incident described below" in the notice. *Sisofo*, slip op. at 2. The notice informed the employee that a PDC would be held to give him the opportunity to respond and provide an account of the incident, and that discipline could be imposed. *Id.* The employee participated in the PDC, after which PennDOT notified the employee that a five-day suspension would be imposed for his inappropriate behavior and safety violations. *Id.* The employee appealed the suspension to the Commission which held a hearing where the employee participated *pro se*, and where the employee testified that he was familiar with the general charges, but not the specific incidents in question. *Id.* at 3-4. We reviewed Section 105.3 of the Commission's regulations regarding notice, as well as relevant case law, and determined that the content of the PDC notice "was too general to allow [the employee] to prepare an adequate response." *Id.* at 7. We further concluded that the suspension notice also "failed to provide a single detail concerning any of the events on which the charges were based to enable [the employee] to discern the nature of the charges and adequately prepare a defense. *Id.* at 8. This Court, as we did in *Chavis*, vacated the suspension order, remanded the case to the Commission for another hearing, and directed PennDOT to provide the employee with notice clearly stating the specific reasons for his suspension. *Id.*

As to the notice issue, Employee presents the same arguments here as she did before the Commission. Employee argues that the Commission erred in relying on *Bazargani*, 711 A.2d 529, because we held that the notice issue had been waived and addressed notice only in *dicta*. Employee also seeks to distinguish *Bazargani* from her appeal because she argues, without citation to any legal authority, that the standard for notice of a suspension is more demanding than for a

15

suspension pending investigation. Employee also seeks to distinguish *Bosnjak*, 781 A.2d 1280, because it, too, pertains to a suspension pending investigation and not a suspension for good cause. Employee argues that the facts and holding in *Sisofo* should govern here, because the ADLS notice failed to provide sufficient notice of the March 2019 incident and deprived the employee of the ability to adequately respond to that incident.

The Department responds that Employee's participation in the Department's investigation, the PDC notice, and the ADLS notice satisfied the notice requirements in Section 105.3 of the Commission's regulations. The Department contends that Employee was provided with specific information about the racial comments she made to and about Irvin, within a specific time period, and the section of the Code of Ethics Employee violated "sufficient to apprise [] [E]mployee of the grounds on which the charges are based." *See* Section 105.3 of the Commission's regulations, 4 Pa. Code §105.3. The Department further responds that Section 101.21 of the Department's regulations contains no notice requirements, and that notice for all suspensions is governed by Section 105.3 of the Commission's regulations.

After careful review of the record and applicable case law, we conclude that the Department's notice to Employee clearly stated the reasons for her Level-One ADLS and was sufficient to apprise Employee of the grounds on which the charges were based. The PDC notice and the ADLS notice each contained a specific description of incidents in which Employee made racial comments to and about her co-workers, including Irvin, a specified time period in which Employee made those comments, and a description of Section B.10 of the Code of Ethics Employee violated by making those comments. R.R. at 1a-2a, 3a-4a. Although the PDC notice

16

and ADLS notice referenced Employee's conduct between November 2019 and May 2020, the March 2019 incident involving Irvin was reported in November 2019 on the DC-121 form filed by Irvin, of which Employee was made aware at each step of the disciplinary process. The record reveals that Employee participated in the Department's investigation, where she denied making any comments to Irvin in March 2019. *See* C.R. at Item 3, Exhibit AA6. Employee also participated in the PDC, where she denied making any such comments to Irvin in March 2019. *See* N.T. at 401. At the Commission hearing, Employee admitted that she made the racial comment to Irvin in March 2019, and explained why she made the comment. *See* N.T. at 373-78, 401-03. The Commission granted in part Employee's request for reconsideration, in which it clarified that the March 2019 incident was reported in November 2019. R.R. at 63a. Employee had the opportunity to respond, and did respond, to the March 2019 incident before the Department and the Commission. The notice deficiencies present in *Chavis*, 370 A.2d at 447, and in *Sisofo*, slip op. at 7-8, are not present here. Therefore, we conclude that Employee's notice of the incidents underlying her Level-One ADLS were sufficiently specific and detailed to enable her to discern the nature of the charges and adequately prepare a defense. *Bosnjak*, 781 A.2d at 1284.

We also reject Employee's argument that the differences between the PDC notice and the ADLS notice were confusing and deprived her of due process. HR Officer Distler's testimony, credited by the Commission, explained that charges presented during a PDC may be dropped based on the Superintendent's final review and imposition of any discipline. Commission Opinion at 23 n.5, 25-26. We may not disturb the Commission's credibility determinations. *Bosnjak*, 781 A.2d at 1286.

17

Employee's second issue encompasses both notice and good cause. Section 2603 of the Act provides than an employee may only be suspended for good cause. Good cause is not defined in the Act but is defined in Section 101.21 of the Commission's regulations. In addition, case law

> has interpreted good cause to mean that any personnel action carried out by the state must be scrutinized in the light of merit criteria, such as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the execution of same. In addition, the criteria must be job related and in some rational and logical manner touch upon competence and ability.

*Shade v. Pennsylvania State Civil Service Commission (Pennsylvania Department of Transportation)*, 749 A.2d 1054, 1057 (Pa. Cmwlth. 2000). Employee does not argue that the Level-One ADLS is not related to the performance of her duties, but instead argues that the Commission violated her due process rights when it disciplined her for the March 2019 incident for which she lacked proper notice. The Department responds that the Commission specifically addressed how the March 2019 incident was reported in November 2019, and that substantial evidence supported the Commission's conclusion that Employee was suspended for good cause. Because we conclude that Employee received proper notice of the March 2019 incident and was able to adequately defend herself, we also reject this argument.

Accordingly, we affirm the Commission's order.

_____
MICHAEL H. WOJCIK, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Theresa M. Snyder,                    :
                                      :
                    Petitioner        :
                                      :
          v.                          : No. 530 C.D. 2022
                                      :
Department of Corrections             :
(State Civil Service Commission),     :
                                      :
                    Respondent        :

# **O R D E R**

AND NOW, this 16th day of January, 2024, the order of the State Civil Service Commission dated May 20, 2022, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge